UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21987-Civ-ALTONAGA
MAGISTRATE JUDGE P.A. WHITE

SAINOVUL SAINTILUS,                    :

    Petitioner,                        :

v.                                     :        REPORT OF
                                     MAGISTRATE JUDGE
JULIE JONES,                           :

    Respondent.                        :

_____

## I. Introduction

Sainovul Saintilus, a state prisoner confined at Columbia Correctional Institution at Lake City, Florida has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his convictions and sentences entered in Case No. 99-22743 in the Circuit Court of the Seventeenth Judicial Circuit of Florida, at Broward County.[1]

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition (DE# 1), the Court has the respondent's response to an order to show cause with supporting Appendix of exhibits (DE# 10), and the petitioner's reply (DE# 13).

## II. Claims

_____

[1]This is Saintilus's second pro se habeas corpus petition filed in this Court, attacking his convictions and sentences entered in Broward County Circuit Court Case No. 99-22743. The first petition was dismissed without prejudice except as to any application of the federal statute of limitations or other federal procedural bar that may apply. Saintilus v. Crews, 13-61035-Civ-Rosenbaum (S.D.Fla. Apr. 22, 2014).

Saintilus challenges his convictions and sentences on the following eleven grounds:[2]

1.  He received ineffective assistance of trial counsel, because his lawyer failed to depose the victim before trial or file a pretrial motion to suppress the identification evidence on the basis that the identification procedures used by police were tainted and impermissibly suggestive.

2.  He received ineffective assistance of trial counsel, because his lawyer failed to communicate the state's twenty-year plea offer, failed to discuss the strength and weaknesses of the state's case, and failed to advise him that he could take a "conditional plea."

3.  He received ineffective assistance of trial counsel, because his lawyer failed to request a hearing or move to strike the jury panel when counsel learned of possible impermissible contact between a juror and the police.

4.  He received ineffective assistance of trial counsel, because his lawyer failed to object or properly question a juror during voir dire regarding the juror's ties to law enforcement.

5.  He received ineffective assistance of trial counsel, because his lawyer failed to object and move for a mistrial when a juror was seen sleeping during critical stages of the trial.

6.  He received ineffective assistance of trial counsel, because his lawyer failed to investigate, interview, or subpoena various prospective defense witnesses who were all available to testify at trial.

7.  He received ineffective assistance of trial counsel, because his lawyer prohibited him from testifying in his own defense at trial.

---

[2]In his form petition, Saintilus presents his claims as four general grounds for relief: multiple grounds of ineffective assistance of trial counsel (Ground One), due process violations (Grounds Two and Three), and newly discovered evidence of innocence (Ground Four). See Petition. (DE# 1). In order for this Court to address the Petitioner's claims without confusion and the various procedural arguments raised by the Respondent, the claims have been renumbered.

8.   He received ineffective assistance of trial counsel, because his lawyer failed to properly provide the trial court with all information needed in order to make a favorable ruling on his request to call Marcus Coastin as a defense witness at trial and failed to properly preserve the issue for appeal.

9.   His due process rights were violated due to vindictive sentencing.

10.  His due process rights were violated when the trial court precluded him from calling as a defense witness Marcus Coastin on the basis that Coastin's testimony would have been inadmissible hearsay.

11.  There exists newly discovered evidence of his innocence in the form of (1) extrajudicial statements made by the victim, supporting his contention of a suggestive photo lineup; and (2) witness statements provided by Phillip Joseph and Joseph Johnson, indicating that a man named "Urlick Loriston" admitted committing the crimes for which he has been convicted.

## III. Facts[3]

The crimes occurred in mid-morning in front of a bank. The victim, Duval Joseph, was shot during a struggle with an assailant over a bank deposit bag, leaving him in a coma for several weeks. When he awoke from the coma, Joseph identified Saintilus from a photo array as his attacker. A few months later, he identified Saintilus in a live lineup and he positively identified Saintilus as the shooter at trial. Three other witnesses also positively identified Saintilus in a photo lineup: an owner of a restaurant in the same plaza as the bank who had been sitting outside drinking coffee the morning of the shooting and who witnessed the incident; an owner of a beauty salon in the same plaza as the bank who saw Saintilus immediately before the shooting and saw him again running

---

[3]The facts have been obtained by review of the evidence admitted at trial, as revealed by the trial transcript. A copy of the transcript of the re-trial can be found at Exhibit 12 to the Respondent's Response. (DE# 10-9). A thorough recitation of the facts of the case with citations to the trial transcript is included in Saintilus's brief on direct appeal. See Initial Brief of Appellant at 5-21. (DE# 10-10; Ex. 19).

from the scene after the shooting; and Daniel Jenkins who was in his car at the drive-thru lane of the bank when he saw Saintilus run across the parking lot away from the bank after the shooting. Jenkins could not identify Saintilus as the shooter at trial. There was no physical evidence linking Saintilus to the crime. The defense presented at trial was essentially misidentification.

### IV. <u>Procedural History</u>

Saintilus was charged by Information with the offenses of robbery with a firearm (Count I) and aggravated battery with a firearm (Count II). (DE# 10-2; Ex. 2). Following a jury trial, he was convicted of the offenses charged and sentenced to a term of forty years' imprisonment with two concurrent twenty-five-year mandatory minimum imprisonment terms. (DE# 10-3; Ex. 4, 5). Saintilus prosecuted a direct appeal from his convictions and sentences, and the Florida Fourth District Court of Appeal reversed the convictions, finding that the state had used improper and prejudicial evidence against him.[4] <u>Saintilus v. State</u>, 869 So.2d 1280 (Fla. 4th DCA 2004).

After a new trial, the jury again found Saintilus guilty of both crimes charged. (DE# 10-9; Ex. 13). The trial court adjudicated Saintilus guilty of the offenses and sentenced him

---

[4]In its opinion, the appellate court summarized the inadmissible testimony as follows:

> The essence of the officer's testimony here was that unnamed witnesses had identified someone named Tutu as being involved in the robbery. Another detective sought to establish that Tutu was in fact the defendant, based on information he received from still other police officers. The only purpose of this testimony was to admit these hearsay statements to link defendant to the crimes, even though such hearsay is clearly inadmissible.

<u>Saintilus v. State</u>, 869 So.2d 1280, 1282 (Fla. 4th DCA 2004).

pursuant to Florida's "10/20/life statute"[5] to a total term of life
imprisonment with a fifty-year minimum mandatory term. (DE# 10-9;
Ex. 14). Saintilus unsuccessfully challenged his sentence in a pro
se motion under Fla.R.Crim.P. 3.800. (DE# 10-9; Ex. 16-18). He next
pursued a direct appeal from his convictions and sentences, raising
two claims: (1) the trial court erred when it prohibited him from
presenting relevant testimony pursuant to a hearsay exception, the
only evidence he sought to introduce; and (2) his concurrent life
sentences with fifty-year minimum mandatory terms imposed following
retrial constituted judicial vindictiveness where the record did
not reflect any change in circumstances since the original
sentencing and the successor judge failed to provide any reason for
the greatly increased sentences. (DE# 10-10; Ex. 19). On October
17, 2007, the Florida Fourth District Court of Appeal affirmed the
convictions and sentences in a *per curiam* decision without a
written opinion. Saintilus v. State, 966 So. 2d 401 (Fla. 4th DCA
2007)(table).

On December 31, 2007, Saintilus filed with the trial court a
pro se motion for postconviction relief with supporting memorandum

---

[5] Section 775.087(2), Fla.Stat. was amended in July 1999, and now bears the
moniker "10-20-life statute." See Elozar v. State, 872 So.2d 934 (Fla. 5th DCA
2004). The predecessor of the 10/20/Life statute provided a three-year minimum
mandatory for the possession of a firearm during the commission of the enumerated
felonies in the statute. See §775.087(2), Fla.Stat. (West 1997). The 1999,
amendment to the statute enhanced the minimum mandatory sentence to ten years of
imprisonment for possessing a firearm, twenty years of imprisonment for
discharging a firearm, and life imprisonment for causing death or great bodily
harm because of the discharge of a firearm during one of the enumerated felonies
specified in the statute, which includes aggravated assault. See §775.087,
Fla.Stat. (West 1999). The factors relevant to sentencing under various versions
of section 775.087(2) have been treated as "essential elements." See Jackson v.
State, 852 So.2d 941, 943 (Fla. 4th DCA 2003). See also Davis v. State, 884 So.2d
1058, 1060 (Fla. 2d DCA 2004)("[T]he minimum terms mandated by the '10-20-Life'
Statute, section 775.087(2), cannot be legally imposed unless the statutory
elements are precisely charged in the information."). Accordingly, the Florida
courts have held that for enhanced sentencing, the charging document must allege
that the firearm was discharged. See Rogers v. State, 875 So.2d 769 (Fla. 2d DCA
2004).

of law pursuant to Fla.R.Crim.P. 3.850, subsequently amended, raising the same claims of ineffective assistance of trial counsel raised in the instant federal petition. (DE# 10-11, 10-13; Ex. 24, 27). The state filed a response with supporting exhibits. (DE# 10-11, 10-13; Ex. 25, 30). The trial court summarily denied relief as to the grounds raised here as grounds one, four and eight. (DE# 10-13; Ex. 26, 31). The trial court denied relief as to grounds two, three, five, six and seven, after conducting an evidentiary hearing where Saintilus was represented by appointed counsel. (DE# 10-13, 10-14; Ex. 29, 32, 33). Saintilus appealed the trial court's rulings, through appointed counsel, solely with regard to grounds four, five and six. (DE# 10-10; Ex. 19). The Florida appellate court affirmed the denial of collateral relief in a *per curiam* decision without written opinion. Saintilus v. State, 90 So.3d 299 (Fla. 4th DCA 2012) (table). After the appellate court denied the motion for rehearing on July 3, 2012, the mandate issued on July 20, 2012. See Saintilus v. State, No. 4D09-1959 (Fla. 4th DCA); http://www.4dca.org.

Saintilus filed a second pro se Rule 3.800 motion and, although the motion was denied in all respects, the trial court awarded Saintilus two additional days of jail credit in an order entered on about January 8, 2013. (DE# 10-19; Ex. 49-51). On approximately April 5, 2013, Petitioner filed a second pro se Rule 3.850 motion with supporting exhibits, as amended, challenging his convictions and sentences on various grounds and alleging newly discovered evidence of his innocence. (DE# 10-14; Ex. 40). Saintilus essentially claimed that the police manipulated the state's witnesses by engaging in suggestive identification procedures. Id. He further maintained that the state had prevented him from discovering the evidence earlier, resulting in manifest injustice. Id.

While the second Rule 3.850 motion was pending before the state trial court, Saintilus filed his first pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court on April 26, 2013.[6] See Saintilus v. Crews, No. 13-61035-Civ-Rosenbaum. The state filed a response to the order to show cause, asserting that the petition should be dismissed for lack of exhaustion of state court remedies. Id. at DE# 29-23. On April 22, 2014, the habeas petition was dismissed without prejudice, except as to any application of the federal statute of limitations or other federal procedural bar that may apply. Id. at DE# 25, 28.

After dismissal of the first §2254 petition, the state filed in the state court a response to the second Rule 3.850 motion, as supplemented, with supporting exhibits, arguing that Saintilus was not entitled to postconviction relief in that his newly discovered evidence claim was meritless. (DE# 10-15; Ex. 42). On August 12, 2014, the trial court summarily denied Saintilus's second Rule 3.850 motion, agreeing with the state and finding the actual innocence claim without merit on the basis that the alleged newly discovered evidence would have been inadmissible hearsay and would probably not produce acquittal on retrial. (DE# 10-14, 10-19; Ex. 41, 44). On March 26, 2015, the Fourth District Court of Appeal affirmed the denial and the mandate issued on April 24, 2015. (DE# 10-19; Ex. 47, 48). See also Saintilus v. State, 2015 WL 1399164 (Fla. 4th DCA 2015).

V. Threshold Issues - Timeliness, Exhaustion and Procedural Bar

Not long after all state court proceedings had concluded,

---

[6]The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

Saintilus returned to this Court, filing the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The respondent has filed a response to an order to show cause with supporting Appendix of exhibits. See Response to Order to Show Cause. (DE# 10). The respondent correctly concedes that the instant petition has been timely filed pursuant to 28 U.S.C. §2244(d). See Response to Order to Show Cause at 6-9. The respondent argues, however, that Saintilus is not entitled to review on the merits of certain claims raised in the instant petition, because those grounds have not been properly exhausted before the state courts and are, therefore, subject to a prospective procedural bar. Id. at 11-3. The respondent argues, in the alternative, that habeas relief is not warranted since all claims are meritless.

## VI. Applicable Legal Principles

### A. Exhaustion and Procedural Bar

It is beyond dispute that, before seeking habeas relief under §2254, a petitioner "must exhaust all state court remedies available for challenging his conviction." See 28 U.S.C. §2254(b)(1). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351 (11th Cir. 2012). A petitioner is required to present his claims to the state courts so that the state courts have the opportunity to address the petitioner's constitutional claim and "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). "[T]o exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007)(per curiam)(quotation omitted).

As the Eleventh Circuit has recently reiterated, "[o]f course, a petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts. The Supreme Court has suggested that a petitioner can exhaust his claim by, for example, including ... 'the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim [as a federal one].'" Preston v. Secretary, Florida Dept. of Corrections, 785 F.3d. 449, 457 (11th Cir. 2015), quoting, Lucas, 682 F.3d at 1351 (quoting Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004)). Thus, a petitioner is not required to cite "book and verse on the federal constitution." Id. (quoting Picard, 404 U.S. at 278). However, the "exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." Preston, 785 F.3d. at 457, quoting, McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). Furthermore, it is not "sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Id., quoting, Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004). "The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." Id.

"[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32, 124 S.Ct. at 1347. In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court

petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id.

As is relevant in this case, in Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of a Rule 3.850 motion. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979).[7] Claims of ineffective assistance of trial counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief. See Kelley v. State, 486 So.2d 578, 585 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). In Florida, exhaustion of claims raised in a Rule 3.850 motion includes an appeal from the denial of the motion. See Leonard, 601 F.2d at 808 (holding that Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction).

A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). "The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to this doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief,

---

[7]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." Id., *citing*, O'Sullivan, 526 U.S. at 845-46. See also Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); In Re Davis, 565 F.3d 810, 821 (11th Cir. 2009)(citation omitted).

The United States Supreme Court has held that actual innocence, if proved, can serve as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006), or expiration of the AEDPA statute of limitations as it was in McQuiggin v. Perkins, ___ U.S. ___, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).[8] "To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him.' Schlup v. Delo, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Schlup, 513 U.S. at 324, or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). "[T]he *Schlup* standard is demanding and permits review only in the "'extraordinary' case." House, 547 U.S. at 538. The fundamental

---

[8]The Eleventh Circuit had before the Supreme Court decision in *McQuiggin* already recognized an equitable exception to AEDPA's statute of limitations based on a credible showing of actual innocence. See San Martin v. McNeil, 633 F.3d 1257, 1267-68 (11th Cir.)(recognizing an actual innocence exception in the context of an untimely section 2254 habeas petitioner and stating, "[a] court also may consider an untimely §2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a fundamental miscarriage of justice because it would require that an individual who is actually innocent remain imprisoned.")(quotation omitted), *cert. denied sub nom.*, San Martin v. Tucker, ___ U.S. ___ , 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).

miscarriage of justice exception to a procedural bar concerns a petitioner's "actual" innocence rather than his "legal" innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (2001)(*citing* Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); Murray v. Carrier, 477 U.S. at 495-96 (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent").

The procedural bar arguments will be addressed below in the discussion section of this report in conjunction with the claims. As noted, the respondent has in the alternative addressed on the merits the grounds presented in this federal petition.

B. Standard of Review in §2254 Cases

Because Petitioner filed his federal petition after April 24, 1996, this case is governed by 28 U.S.C. §2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). See Debruce v. Commissioner, Alabama Dept. of Corrections, 758 F.3d 1263, 1265-66 (11th Cir. 2014). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from this Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

The AEDPA imposes a highly deferential standard for reviewing the state court rulings on the merits of constitutional claims raised by a petitioner. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

12

and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 786–87 (2011). See also Greene v. Fisher, 565 U.S. __, ___, 132 S.Ct. 38, 43, 181 L.Ed.2d 336 (2011)(The purpose of AEDPA is "to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.")(internal quotation marks omitted).

A state court's decision is "contrary to" clearly established Supreme Court precedent in either of two respects: (1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000). To determine whether a state court decision is an "unreasonable application" of clearly established federal law, we are mindful that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S.Ct. at 1522. As a result, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, id. at 786 (quotation marks omitted).

It is noted that the state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); cf. Harrington, 562 U.S. at 98, 131 S.Ct.

at 785 (reconfirming that "§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference); Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. at 7-8).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. Harrington, 562 U.S. at 91-99, 131 S.Ct. at 780-84 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); Gill v. Mecusker, 633 F.3d 1272, 1288 (11th Cir. 2011)(acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, citing Harrington, 562 U.S. at 98-99, 131 S.Ct. at 784-85 and Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1254 (11th Cir. 2002)). See also Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt.")(citations and internal quotation marks omitted).

As recently noted by the Supreme Court in Woods, adherence to these principles serves important interests of federalism and comity. Woods v. Donald, ___ U.S. ___, 135 S.Ct. 1372, 1376 (2015). "AEDPA's requirements reflect a 'presumption that state courts know

14

and follow the law.'" Id., *quoting*, <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)(per curiam).

Review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. See <u>Cullen</u>, 131 S.Ct. at 1398-1400 (holding new evidence introduced in federal habeas court has no bearing on Section 2254(d)(1) review). And, a state court's factual determination is entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1). Under 28 U.S.C. §2254(e)(1), this Court must presume the state court's factual findings to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. See <u>id</u>. §2254(e)(1). Although the Supreme Court has "not defined the precise relationship between § 2254(d)(2) and §2254(e)(1)," <u>Burt v. Titlow</u>, 571 U.S. ___, ___, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013), the Supreme Court has emphasized "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Burt</u>, <u>id</u>. (*quoting* <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

### C. <u>Ineffective Assistance of Trial Counsel</u>

Petitioner claims that trial counsel provided constitutionally ineffective assistance for various enumerated reasons. This Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009); Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011). "[T]he Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 558 U.S. at 9 (internal quotations and citations omitted).

A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. Chandler v. United States, 218 F.3d

1305, 1316 (11th Cir. 2000)(*en banc*), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). If the petitioner cannot meet one of *Strickland*'s prongs, the court does not need to address the other prong. <u>Strickland</u>, 466 U.S. at 697. <u>See also</u> <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000).

Keeping these principles in mind, the Court must determine whether counsel's performance was both deficient and prejudicial under *Strickland*. As indicated, courts must be highly deferential in reviewing counsel's performance, and must apply the strong presumption that counsel's performance was reasonable. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689. <u>See also</u> <u>Chandler v. United States</u>, 218 F.3d at 1314. "Surmounting *Strickland's* high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). <u>See also</u> <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006)(*citing* <u>Chandler v. United States</u>, 218 F.3d at 1313). Consequently, "it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." <u>French v. Warden, Wilcox State Prison</u>, 790 F.3d 1259, 1268 (11th Cir. June 23, 2015), *quoting,* <u>Johnson v. Sec'y Dep't of Corr.</u>, 643 F.3d 907, 911 (11th Cir. 2011).

A habeas court's review of a claim under the *Strickland* standard is "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." <u>Burt v. Titlow</u>, 134 S.Ct. 10, 13, *quoting* <u>Cullen v. Pinholster</u>, 563 U.S. 170,_____, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)). <u>See also</u>

17

Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." Knowles, 556 U.S. at 123, 129 S.Ct. at 1420. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.

## VII. Discussion

### A. Claims One, Two, Three, Seven and Eight

Saintilus claims that he received ineffective assistance of trial counsel for the eight reasons enumerated above in the Claims Section of this Report. The respondent argues that while all eight grounds were raised in Saintilus's initial Rule 3.850 motion, **claims one, two, three, seven and eight** are unexhausted and procedurally barred since Saintilus never presented those grounds to the state appellate court in his appeal from the denial of the postconviction motion. The respondent's procedural arguments are meritorious.

Review of the record reveals that Saintilus did raise the ineffective assistance of trial counsel claims presented here in his initial Rule 3.850 motion, which grounds were reviewed and rejected on the merits by the trial court either summarily or after an evidentiary hearing had been conducted. See DE# 10-11, 10-13, 10-14; Ex. 24-33. Saintilus, represented by appointed counsel, prosecuted an appeal from the trial court's rulings, denying his

Rule 3.850 motion, as amended. See DE# 10-14; Ex. 34, 35. Saintilus raised the following claims before the Florida Fourth District Court of Appeal, as summarized in his initial brief:

**POINT I**

The circuit court reversibly erred in denying Appellant's motion for postconviction relief where Appellant established by evidence that trial counsel rendered ineffective assistance of counsel to Appellant in two material respects, to his prejudice:

(Claim V) A defendant has a right to a trial by no less than six jurors. Where one juror is sleeping throughout the trial, the juror cannot effectively serve, and the defendant thereby receives a trial by no more than five persons. The defense attorney's failure to bring the obviously sleeping juror to the attention of the trial court, to request replacement of the juror or a mistrial, deprived Appellant of his right to a jury trial and constituted ineffective assistance of counsel which requires reversal of Appellant's convictions and remand for a new trial.

(Claim VI) The failure to present potentially exonerating witnesses can constitute ineffective assistance of counsel. Due to counsel's acts and omissions, confidence in the verdict is undermined. There is a reasonable probability that the result of the trial would have been different had Appellant received competent representation. Thus, the circuit court's order denying Appellant's postconviction motion should be vacated and the cause remanded for a new trial.

**POINT II**

The trial court reversibly erred in summarily denying Claim IV of Appellant's motion for postconviction relief without an evidentiary hearing. Appellant set forth a sufficient factual basis to support his claim that trial counsel provided ineffective assistance by failing to strike or even properly voir dire a venireperson having close ties to law enforcement who was later seated as a juror. In fact, the juror became the foreperson of his jury. As neither the record nor the trial court's order and attachments conclusively rebutted his claim, reversal is required for an evidentiary hearing or other appropriate relief, assuming *arguendo* that Appellant is not granted a new trial based on Point I, *supra*.

(Corrected Initial Brief of Appellant at 17-8)(DE# 10-14; Ex. 35).

As indicated above, in Florida, exhaustion of claims raised in a Rule 3.850 motion includes an appeal from the denial of the motion. See Leonard, 601 F.2d at 808 (holding that Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction). A petitioner's claim that is not exhausted but would clearly be barred if returned to state court must be denied. Kelley v. Secretary for Dept. of Corr., 377 F.3d 1317, 1351 (11th Cir. 2004)("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." (internal quotation marks omitted)). It would be futile in this case to dismiss the case to give Saintilus the opportunity to exhaust these five ineffective assistance of trial counsel claims because the claims could have and should have been raised on appeal from the trial court's rulings, denying his initial Rule 3.850 motion.

The petitioner's unexhausted claims are now incapable of exhaustion at the state level and would be procedurally barred under Florida law since Saintilus cannot now take a timely appeal from the trial court's orders. See Fla.R.App.P. 9.140(b)(3). Due to Saintilus's failure to take a proper appeal from the denial of post conviction relief, there is no longer a remedy available in state court. Because Saintilus cannot now take an appeal from the denial of his initial Rule 3.850 motion to attempt to successfully exhaust the ineffective assistance of counsel claims, claims one, two, three, seven and eight are considered procedurally defaulted unless Saintilus can be excused from the default. See Thomas v. Crews, 2013 WL 3456978, 14, 14 n.8 (N.D.Fla. 2013).

20

Even when a claim has been procedurally defaulted in the state courts, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Maples v. Thomas, ___ U.S. ___, ___, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012)(citations omitted); In Re Davis, 565 F.3d 810, 821 (11th Cir. 2009)(citation omitted). See also Martinez v. Ryan, ___ U.S. ___, ___, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012).

For a petitioner to establish cause, the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)(quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397). See also Siebert v. Allen, 455 F.3d 1269, 1272 (11th Cir. 2006). To show prejudice, in essence, a petitioner must demonstrate that there is at least a reasonable probability that the outcome of the proceeding would have been different. See Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent. See House v. Bell, 547 U.S. 518 (2006); Dretke v. Haley, 541 U.S. 386, 124 S.Ct. 1847 (2004).

Saintilus has not even alleged, let alone demonstrated, either cause or prejudice to excuse the procedural default. Rather, it appears that Saintilus is attempting to overcome the procedural bar on the basis of actual innocence premised on newly discovered evidence (i.e., the ground raised in the instant §2254 petition as ground eleven). See Traverse at 16. (DE# 13). For the reasons

21

expressed below in the discussion of ground eleven, Saintilus cannot show that a fundamental miscarriage of justice will occur if this Court does not reach the merits of grounds one, two, three, seven and eight.[9] This is so, because Saintilus has no new and reliable evidence of actual innocence. See Schlup, 513 U.S. at 324 ("'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial."). Petitioner's procedural default bars federal habeas review of these grounds (i.e., claims one, two, three, seven and eight).

## B. Ground Four

Saintilus claims in **ground four** that he received ineffective assistance of trial counsel, because his lawyer failed to object or properly question Juror Izquierdo during *voir dire* regarding the juror's ties to law enforcement.

It is axiomatic that an accused is guaranteed the right to a fair trial by a panel of impartial and indifferent jurors. Irvin v. Dowd, 366 U.S. 717, 722(1961). See also Ross v. Oklahoma, 487 U.S. 81, 85 (1988) ("It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury."). The purpose of voir dire is to determine whether potential jurors can render a verdict solely on the basis of evidence presented and the instructions given them by the trial court. Wilcox v. Ford, 813 F.2d 1140, 1150 (11th Cir. 1987). See

---

[9]The undersigned notes that the claims are meritless as argued by the Respondent in its thorough response. See Response to Order to Show Cause at 18-21, 21-4, 24-6, 36-7, 37-40. Saintilus could not demonstrate that he received ineffective assistance of trial counsel for the reasons alleged in grounds one, two three, seven and eight pursuant to the *Strickland* standard, as properly determined by the state trial court. See Order Granting Evidentiary Hearing, In Part, and Denying in Part, Defendant's Motion for Post-Conviction Relief; State's Response to Defendant's Motion for Post Conviction Relief filed on August 18, 2008; State's Response to Defendant's Motion for Post-Conviction Relief filed on July 24, 2014; Transcript of evidentiary hearing conducted on May 1, 2009, at 49-50. (DE# 10-11; 10-13; 10-14; Ex. 25, 26-33).

also J.E.B. v. Ala. ex rel. T.B., 511 U.S. 127, 143-44, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994)("Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently."); Mu'Min v. Virginia, 500 U.S. 415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991)("Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."). Thus, voir dire plays a critical function in protecting a defendant's Sixth Amendment right to an impartial jury.[10] Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981).

A defendant is entitled to effective assistance of counsel during *voir dire*. Brown v. Jones, 255 F.3d 1273, 1278-9 (11th Cir. 2001). However, counsel's questions and tactics during *voir dire* are a matter of trial strategy. Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001). Because empaneled jurors are presumed impartial, a habeas petitioner must show that the juror selection process produced a juror that was actually biased against him to satisfy *Strickland's* prejudice prong. See Grisnold v. Sec'y, Dep't of Corr., 2010 WL 3610442, 5-6 (M.D. Fla. 2010), *citing,* Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), Hughes, 258 F.3d at 458. See also Johnson v. Armontrout, 961 F.2d 748, 755 (8th Cir. 1992)(holding that absent the showing of a strategic decision, failure to request the removal of a biased

---

[10]In Florida, the test for whether a juror is competent is "whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instruction on the law given to him [or her] by the court." Turner v. State, 645 So.2d 444, 446 (Fla. 1994). Similarly, in the federal courts, a juror can be dismissed when just cause exists (i.e., when that juror refuses to apply the law or to follow the court's instructions). See generally United States v. Abbell, 271 F.3d 1286, 1302 (11th Cir. 2001), cert. denied, 537 U.S. 813 (2002).

juror can constitute ineffective assistance of counsel); <u>Rogers v. McMullen</u>, 673 F.2d 1185, 1189 (11th Cir. 1982)(defendant's Sixth Amendment right to a fair and impartial jury not violated absent a showing that a jury member hearing the case was actually biased against him). Thus, even in a case where a juror is not struck for cause, but arguably should have been, a petitioner is not entitled to relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial. <u>See Passman v. Blackburn</u>, 652 F.2d 559, 567 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 1022 (1982).

Review of the trial transcript indicates that during *voir dire*, then prospective juror Izquierdo told the trial court that his brother and brother-in-law were "in law enforcement." <u>See</u> Trial Transcript at 32. (DE# 10-7; Ex. 12). The court immediately asked Izquierdo whether that would affect his ability to be fair and impartial in this case, and Izquierdo unhesitatingly answered: "It won't affect me." <u>Id</u>. at 32-3. When Izquierdo was questioned by trial counsel about his father's arrest and whether that fact would cause him to have anger or bias towards the police, Izquierdo repeated that he could be a fair and impartial juror. <u>Id</u>. at 92. During jury selection, trial counsel addressed all prospective jurors, asking if they would not decide the case until all the evidence had been presented and asking whether they would require the state to prove each and every element of the crime charged beyond a reasonable doubt. <u>Id</u>. at 94. Venireperson Izquierdo remained silent, not telling counsel that he would pre-judge the case or that he would find Saintilus guilty even if the state had not proved its case beyond a reasonable doubt. <u>Id</u>. At the conclusion of the strike conference, after trial counsel had accepted Izquierdo to sit as a juror, the court asked Saintilus if he agreed with the jurors selected by counsel and Saintilus

24

answered in the affirmative. Id. at 105. Juror Izquierdo served as the foreperson. See Verdict. (DE# 10-9; Ex. 13).

In the state postconviction proceedings, the state filed a response to Santilus's Rule 3.850 motion where this claim was raised. See Response to Defendant's Motion for Post Conviction Relief. (DE# 10-11; Ex. 25). Before going on to address the claims, the state first reviewed the *Strickland* standard. Id. at 2-3. The state then argued that when applying the applicable standard for review, Saintilus was not entitled to postconviction relief on ground four, because Saintilus had waived his claim due to his express acceptance of the jury after the jury selection process. Id. at 5. The state further argued that, regardless of his ties to law enforcement, Juror Izquierdo indicated during *voir dire* that he could be fair and impartial. Id. The trial court agreed with the state and summarily denied relief on this claim. See Order Granting Evidentiary Hearing, In Part, and Denying in Part, Defendant's Motion for Post-Conviction Relief. (DE# 10-13; Ex. 26). The denial of relief was affirmed on appeal. Saintilus v. State, 90 So.3d 299 (Fla. 4th DCA 2012)(table).

As correctly found by the state postconviction courts, Saintilus has failed to demonstrate that by allowing the subject juror to serve on the jury counsel impinged upon the fundamental fairness of his trial. It is apparent from the responses given during *voir dire* to the questions posed by the court and trial counsel that Juror Izquierdo could be fair and impartial, and that he had no fixed belief in Saintilus's guilt. Saintilus's contention that further or different questioning may have ultimately elicited some evidence of actual bias is purely speculative.

Additionally, the record does not demonstrate that the

25

decision to keep Izquierdo as a juror was rooted in anything other than sound trial strategy based upon the circumstances of the case.[11] Even if counsel's performance could in some way be considered deficient in this regard, Saintilus, at the very least, acquiesced in the strategy employed not to strike this juror. It is also important to note that, after having been selected as a juror and immediately before the trial commenced, the trial court clearly instructed the jurors regarding the burden of proof in a criminal case; the presumption of innocence; their duty to decide the case based solely on the evidence presented; the requirement that they must follow the law, as instructed by the court; etc. See Trial Transcript at 110-14. The court also advised the jurors that they should not form any definite or fixed opinion as to the merits of the case until they had received all the evidence, the argument of counsel, and the court's instructions on the law. Id. The jury was again instructed on these principles before starting deliberations.[12] Id. at 388-400.

Moreover, the evidence admitted in this case, which included several positive identifications of Saintilus as the perpetrator, supported the convictions. Thus, Saintilus he suffered no prejudice as a result of the alleged inaction, even if counsel's performance could in any way be deemed deficient with regard to jury selection. See Baldwin v. Johnson, 152 F.3d 1304, 1315 (11th Cir. 1998)(holding that defense counsel's failure to challenge prosecutor's use of peremptory strikes did not constitute

----

[11]Scrutiny of an attorney's performance is highly deferential, therefore, reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. Strickland v. Washington, 466 U.S. 668, 689-90 (1984).

[12]It is presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987).

ineffective assistance of counsel since such decision was reasonable under law which existed at the time, and defendant failed to show prejudice in that there was overwhelming evidence of guilt), cert. denied, 526 U.S. 1047 (1999). Consequently, the record does not demonstrate ineffective assistance from his lawyer with regard to the jury here. Defense counsel's action, or inaction, will not support a claim of ineffective assistance. Strickland, supra. The ineffective assistance of trial counsel claim is, therefore, meritless. See Strickland v. Washington, supra. Petitioner is not entitled to relief on Ground Four.

## C. Ground Five

Saintilus alleges in **ground five** that trial counsel rendered ineffective assistance when he failed to object and move for a mistrial when Juror McNeal was seen sleeping during critical stages of the trial.

The record reveals as follows. After closing arguments had been made, and before jury instructions were given, the jury was excused for lunch. See Trial Transcript at 385-86. (DE# 10-9; Ex. 12). Once the jury had exited the courtroom, trial counsel informed the court that it appeared that Juror McNeal had been "napping" through much of the trial. Id. at 386. The trial court stated that the court too had noticed that Juror McNeal seemed to be asleep a couple of times, but indicated that people often listen with their eyes closed. Id. at 386-87. The prosecutor responded that Jury McNeal had "small eyes." Id. Since trial counsel had failed to earlier alert the court to the possibility that Juror McNeal might have been sleeping during parts of the trial, the trial court took no action at that point. Id. After the lunch break, the court instructed the jury. During the instructions, the court apparently noticed that Juror McNeal had his eyes closed and *sua sponte* asked

Juror McNeal whether he was all right. Id. at 395. Juror McNeal did not verbally respond to the court's question. Id. The juror must have given some non-verbal response since the court responded with "okay," and the proceedings resumed. Id. at 396.

The ineffective assistance of trial counsel claim was raised in Saintilus's initial pro se Rule 3.850 motion. The trial court conducted an evidentiary hearing on the claim where Saintilus was represented by appointed counsel. See Transcript of hearing conducted on May 1, 2009. (DE# 10-13; Ex. 32). Saintilus was called as a witness in his own behalf at the hearing and he testified in pertinent part that he noticed two jurors sleeping during the trial, Juror McNeal and an unnamed female juror. Id. at 6-7, 17. He testified that he alerted counsel to the sleeping jurors, through the interpreter, and he told counsel that he did not want to proceed with the trial with sleeping jurors. Id. According to Saintilus, counsel told him that it was best to do nothing and counsel did not object to the sleeping jurors or seek a mistrial. Id.

The state called two witnesses at the evidentiary hearing: former trial counsel Thomas Austin and prosecutor Spencer Multack. Austin testified that he recalled an issue regarding Juror McNeal who appeared to have been sleeping during portions of the trial. Id. at 23. Austin testified that he did not remember whether it was Saintilus who had pointed out Juror McNeal to him or if he himself had noticed the juror. Id. Austin testified that there was never an issue of a second juror who might have been asleep during the trial. Id. Austin testified that during his fourteen years as a practicing attorney, he never saw a sleeping juror. Id. at 24. He testified that often jurors close their eyes during the trial and that does not mean that they are asleep. Id. Austin was asked:

28

"[T]here was nothing that you observed of any juror audibly or inaudibly falling asleep during the course of [the] trial, other than what you placed on the record here?" Id. Austin answered, "That is correct." Id. Trial counsel admitted during cross-examination that he had not asked the court to colloquy the alleged sleeping juror about whether he had been asleep at any point during the trial and, if he had been asleep, ask the juror what he missed during that time. Id. at 28-9. Former trial counsel also conceded that he had not objected to the trial court's failure to question Juror McNeal and never sought a mistrial on this basis. Id. at 28-9.

Prosecutor Multack testified that he recalled Juror McNeal, because he was a juror that he did not want on the panel. Id. at 34. He also testified that the particular courtroom was arranged in such a way that the state's counsel table was in close proximity to the jury box and Juror McNeal had been sitting very close to him. Id. at 35. Multack further testified that he recalled that Juror McNeal's eyes were small and "squinty," which made it appear as if he were sleeping. Id. Multack testified that during the trial, he would look at the jurors and he had not seen any of the jurors, including Juror McNeal, asleep. Id. Multack testified that if he had observed a sleeping juror, he would have advised the court. Id. at 35-6.

After listening to the testimony of the witnesses, respective counsel presented extensive argument to the court regarding the credibility of the witnesses and the applicable standard to be applied to the ineffective assistance of trial counsel claim (i.e., the *Strickland* standard). Id. at 38-49. In relevant part, the state argued that the resolution of the issue was one of credibility of the witnesses and that there was no credible evidence that there

29

was more than one juror who had been sleeping during the trial and, simply because juror McNeal may have had his eyes closed during the trial or appeared not to be paying attention to the proceedings, there was no credible evidence that he had been asleep. Id. at 43-4, 46-7. The trial court then found the claim meritless, stating as follows:

> I want to thank counsel very much for the excellent job they did. I would agree that this case comes down to one of credibility. I have had the opportunity to view each of the witnesses, evaluate their testimony, the weight, the way they present it, the consistencies, the inconsistencies, and evaluating the equation, it is very clear that the state's witnesses Mr. Austin and Mr. Multack are extraordinarily credible and your client is lacking credibility. Obviously he has a bias here, but his testimony does not add up for a variety of reasons, for many reasons.
>
> But for each and every one of the allegations that have been put before this Court, the Court finds that the defendant, the Petitioner, excuse me, has woefully failed to meet his burden under both prongs of Strickland and therefore the Court would respectfully and incorporate by reference the argument by counsel for the state and the Court would respectfully deny the motion for post conviction relief. Please explain his appellate rights in that regard. Thank you very much. For the record I think it is clear on its face. Write up a short order.

Id. at 49-50. A written order followed, stating that the Rule 3.850 motion was denied for the reasons stated on the record at the evidentiary hearing. (DE# 10-14; Ex. 33). The ruling was affirmed on appeal. Saintilus, 90 So.3d 299.

Thus, it is clear that in arriving at its decision the postconviction court found Saintilus's testimony which conflicted with former trial counsel and the prosecutor incredible. Id. Determinations of credibility are best made by the trial court judge, who can assess the demeanor and candor of the witnesses. Gore v. Secretary for Dept. of Corrections, 492 F.3d 1273, 1300 (11th Cir. 2007)(noting that while reviewing court also gives a

certain amount of deference to credibility determinations, that deference is heightened on habeas review), *citing*, <u>Rice v. Collins</u>, 546 U.S. 333, 341-42 (2006)(stating that "[[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination).

Thorough review of the record in this case yields no suggestion that the trial court's findings of fact made during the state postconviction proceeding where the subject issue was raised were not supported by the record or were otherwise deficient. Because Saintilus has not rebutted the trial court's findings of fact by clear and convincing evidence, the findings are presumed correct.[13] <u>See</u> 28 U.S.C. §2254(e)(1).

With this presumption in mind, it is clear that Saintilus's ineffective assistance of trial counsel claim raised here as ground five fails and the state courts properly denied Saintilus relief on this claim. The record reveals that one juror may have had his eyes closed during portions of the trial. There is no credible evidence of record that Juror McNeal was in fact asleep during any or all of the trial. Actually, the record shows otherwise through the

---

[13]Federal courts in habeas corpus proceedings are required to grant a presumption of correctness to state court's explicit and implicit findings of fact, if supported by the record. <u>Green v. Johnson</u>, 160 F.3d 1029, 1045 (5th Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1174 (1999). If it is clear that the trial court would have granted the relief sought by the petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1983), <u>citing</u>, <u>LaVallee v. Delle Rose</u>, 410 U.S. 690 (1973). The presumption of correctness afforded factual findings of state courts applies equally to factual determinations made by state trial and appellate courts. <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981). Although the Court in <u>Sumner</u> was interpreting Section 2254 as it existed pre-AEDPA, the holding hinged on the fact that no distinction was made between state trial and appellate courts in the pre-AEDPA version of section 2254, a fact which continues to be true of the current version of the statute. <u>See</u> <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003).

testimony of the prosecutor during the postconviction evidentiary hearing. Also, during jury instructions, the trial court *sua sponte* questioned Juror McNeal as to his well-being and apparently Juror McNeal made a non-verbal response that he was okay. See Trial Transcript at 395. (DE# 10-9; Ex. 12).

Thus, Saintilus's due process rights were not violated here and trial counsel did not render ineffective assistance by not pursuing the issue. Saintilus cannot show that his counsel acted outside the wide range of reasonable professional assistance or that there was a reasonable probability of a different outcome had his counsel requested the court to colloquy Juror McNeal, moved for a mistrial, or sought the removal of the juror. See Lamar v. Graves, 326 F.3d 983, 986 (8th Cir. 2003)(holding that it was not unreasonable application of clearly established federal law for state court to conclude that trial counsel was not ineffective when he did not object to juror sleeping during portion of state's case because he did not mind if juror missed part of state's presentation, and therefore habeas corpus relief was not warranted); United States v. Springfield, 829 F.2d 860, 864 (9th Cir. 1987)(holding that not every incident of juror misconduct, including a sleeping juror, requires a new trial). See also Gaston v. MacFarland, 2005 WL 1828660, *8 (D.N.J. July 29, 2005)("Conflating a juror's claimed inattentiveness with a defense attorney's ineffectiveness in no way demonstrate that his counsel's performance was deficient as measured by an objective standard of reasonableness "under prevailing professional norms" or that petitioner was prejudiced by the performance); Ciaprazi v. Senkowski, 151 F.App'x 62, 63-4 (2d Cir. 2005)(holding that trial counsel's decision not to object to juror who had possibly been sleeping may well have been based on his desire to retain the inattentive juror rather than to seek to replace him with an

32

alternate and was, therefore, a strategic decision that did not constitute ineffective assistance of counsel).

Finally, no prejudice has been established. The evidence admitted at trial consisted of eyewitness testimony which was more than sufficient to support the convictions of robbery with a firearm and aggravated battery with a firearm. See Jackson v. Virginia, 443 U.S. 307, 326 (1979). Thus, under the totality of the circumstances, the record does not reflect an error of constitutional magnitude which had a substantial and injurious effect or influence on the trial proceedings. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict).

The trial court's determination that Saintilus was not entitled to postconviction relief on his ineffective assistance of trial counsel claim raised here as ground five, which ruling was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

### D. Ground Six

Saintilus alleges in **ground six** that he received ineffective assistance of trial counsel, because his lawyer failed to investigate, interview, or subpoena as witnesses for trial Roni Norall, Martelus Luens, Lerbi Lahath, and Wilfird Lois who Saintilus asserts were all available to testify in his behalf. In

his Rule 3.850 motion, Saintilus essentially alleged that these witnesses would have testified that Saintilus had not committed the offenses charged and that the true perpetrators implicated Saintilus in the murders "to get even" with him. See Motion for Postconviction Relief at 14-5; Memorandum of Law at 12-3. (DE# 10-11; Ex. 24).

This issue was disposed of after an evidentiary hearing in the trial court. At the hearing, Saintilus testified that he provided trial counsel with the names of several individuals he wanted counsel to call as defense witnesses. See Transcript of hearing conducted on May 1, 2009, at 11-3, 17. (DE# 10-13; Ex. 32). Saintilus testified that trial counsel assured him that the individuals would be called as witnesses; however, counsel failed to do so. Id. According to Saintilus, the prospective witnesses would have offered exculpatory testimony and he would have been found not guilty of the crimes charged. Id.

Former trial counsel Austin testified that he remembered Saintilus providing him with the names of various individuals and he interviewed several of those individuals. Id. at 24-5. In particular, he remembered interviewing Roni Novails[14] on February 16, 2005, at the jail where she was then incarcerated. Id. at 25. Austin testified that he would have called Novails if she had provided exculpatory testimony. Id. While counsel could not recall the details of the interview, counsel testified that the prospective witness was either not credible or her version of the events conflicted with Saintilus. Id. Trial counsel did not remember the other individuals specified by Saintilus in his Rule 3.850 motion. Id. Trial counsel did remember attempting to call as

---

[14]Roni Novails is apparently the same individual reffered to by Saintilus in his pleadings as "Roni Norall."

a defense witness Marcus Coastin, however, the trial court prohibited the defense from doing so. Id.

The state argued that Saintilus was not entitled to relief since Saintilus had not demonstrated that he suffered any prejudice as a result of counsel's failure to call the identified individuals as witnesses at trial. Id. at 44-5. Specifically, Saintilus had not shown that there was a reasonable probability that the result of the trial would have been different. Id. After hearing the testimony of the witnesses and argument of counsel, the trial court found trial counsel's testimony credible and Saintilus's testimony incredible. Id. at 49-50. Based upon the credibility finding and argument from the state, the trial court rejected Saintlus's ineffective assistance of trial counsel claim as meritless. Id.

As stated above, this Court's review of a counsel's performance is highly deferential, and there is a strong presumption that counsel's performance was reasonable and that all significant decisions were made in the exercise of reasonable professional judgment. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000). Effective assistance of counsel embraces adequate pretrial investigation. See Strickland v. Washington, 466 U.S. 668, 691 (1984)(stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." See also McCoy v. Newsome, 953 F.2d 1252, 1262-63 (11th Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." Id. at 1263, quoting, House v. Balkcom, 725 F.2d 608, 615, 617-18 (11th Cir.), cert. denied, 469 U.S. 870 (1984). It is evident from the record that trial counsel did properly investigate

the facts of the case and had investigated all possible defenses, contrary to Saintilus's assertion.

Further, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1268 (11th Cir. 2012). "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995)(quotation omitted). Trial counsel testified that he interviewed several potential defense witnesses provided him by Saintilus and he elected not to call any of those individuals because they either did not have beneficial testimony or were not credible witnesses. There are any number of legitimate strategic reasons trial counsel may have elected not to call any or all of the identified prospective witnesses, especially Roni Novails (or Norall) and nothing in the existing record suggests that it was the result of deficient performance.

Even if trial counsel's performance were to be seen as deficient in any respect, Saintilus still cannot satisfy the prejudice prong of *Strickland*. As determined by the state courts, Saintilus has not shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. The failure to call an exculpatory witness is more likely to be prejudicial when the conviction is based on little evidence of guilt. Fortenberry v. Haley, 297 F.3d 1213, 1228-29 (11th Cir. 2002). This is not the situation in this case.

Review of the evidence admitted at trial shows that the victim identified Saintilus as the shooter during a photographic lineup, a live lineup and at trial. <u>See</u> Transcript of Trial at 137, 141-47. Other eyewitnesses also identified Saintilus before trial and during trial as the man they had seen on the day of the shooting in the same plaza as the bank where the victim had been shot and the same man running from that plaza at the time of the shooting. <u>Id</u>. at 196-204, 231-41. The defense at trial was one of mistaken identification and lack of physical evidence linking Saintilus to the offenses charged. <u>Id</u>. at 347-64, 378-85. Although the now-identified witnesses may have cast some doubt upon the other evidence introduced at trial, this is insufficient to show that the jury would have believed the alleged retaliation testimony over the other credible evidence of record. <u>See also</u> <u>Body v. United States</u>, 568 F.App'x 760, 762-63 (11th Cir.), *cert. denied*, ___ U.S. ___, 135 S.Ct. 501, 190 L. Ed. 2d 377 (2014), *citing*, <u>United States v. Hunt</u>, 526 F.3d 739, 745 (11th Cir. 2008)(noting that generally, juries can choose from several reasonable conclusions that could be drawn from the evidence, and the evidence need not be "inconsistent with every reasonable hypothesis other than guilt"). As was the prerogative of the fact-finder, it rejected the defense presented, and instead believed the strong evidence admitted by the state. This Court must defer to the trial court's judgment as to the weight and credibility of the evidence. <u>See</u> <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11th Cir. 1987), *citing*, <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979).

Accordingly, the trial court's determination that Saintilus was not entitled to postconviction relief on his ineffective assistance of trial counsel claim presented here as ground six, which ruling was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable

37

determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

### E. Ground Nine

Saintilus alleges in **ground nine** that his due process rights were violated due to vindictive sentencing where he was sentenced after retrial to a harsher term of imprisonment by a successor judge.

As indicated above in the procedural history section of this Report, Saintilus was sentenced to a term of forty years' imprisonment with two concurrent twenty-five-year mandatory minimum imprisonment terms after his first trial. (DE# 10-3; Ex. 4, 5). The Florida appellate court reversed Saintilus's convictions and remanded the case for a new trial. Saintilus, 869 So. 2d 1280. A different judge presided over the new trial. (DE# 10-2, Ex. 3; 10-7, Ex. 12). Saintilus was sentenced by the successor judge to a total term of life imprisonment with a fifty-year minimum mandatory term. (DE# 10-9; Ex. 14). Saintilus challenged the harsher sentence in a Motion to Correct Sentence with attached exhibits pursuant to Fla.R.Crim.P. 3.800. (DE# 10-9; Ex. 16). The state filed a response, arguing that Saintilus had not shown actual vindictiveness on the part of the successor judge. (DE# 10-10; Ex. 17). The trial court agreed with the state and find the claim meritless. (DE# 10-10; Ex. 18). The trial court's ruling was affirmed on appeal. Saintilus, 966 So.2d 401.

Resentencing may implicate the Due Process Clause if, after the vacatur of a defendant's sentences, the trial court imposes a harsher punishment than the original sentence. See North Carolina

v. Pearce, 395 U.S. 711, 723-6 (1969), *overruled on other grounds*, Alabama v. Smith, 490 U.S. 794 (1989). The Supreme Court has not held, however, that the Due Process clause absolutely precludes a harsher sentence upon reconviction. Blackledge v. Perry, 417 U.S. 21 (1974), *citing*, Pearce, supra (holding that while there exists no absolute constitutional bar to the imposition of a harsher sentence upon retrial, due process requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial). In a habeas corpus proceeding, a finding of judicial bias may not be made "unless it affirmatively appears in the record that the court based its sentence on improper information." See Farrow v. United States, 580 F.2d 1339, 1359 (9th Cir. 1978)(en banc).

There is no presumption of vindictiveness when a harsher sentence is imposed after reconviction where a different judge presided over the second trial and sentencing. See Colten v. Kentucky, 407 U.S. 104 (1972)(finding sentence not vindictive where separate judge handled second trial and sentencing). In *Colten*, the Supreme Court recognized that when a second judge conducts a new trial, "[t]he possibility of vindictiveness, found to exist in *Pearce*, is not inherent." Colten, 407 U.S. at 116. See also Holland v. State, 916 So.2d 750, 763 (Fla. 2005)(stating that "[i]n cases like Holland's where the judge presiding over the retrial was not the same judge who presided over the original trial, the defendant bears the burden of proving the court acted with actual vindictiveness."). This is the situation in the instant case.

Because a different judge sentenced Petitioner after his retrial, no presumption of vindictiveness applied. Absent this presumption, no reasons were required as to why there was an

increase in sentence. Further, there is nothing whatever in the record giving rise to an inference of vindictive sentencing regarding the new sentence now challenged. See Transcript of sentencing conducted on April 22, 2005. (DE# 10-9; Ex. 12). The successor sentencing judge ordered the presentence investigation report before sentence and the sentencing judge had the benefit of the report when imposing sentence as well as the victim's request and state's recommendation that the court impose a life sentence. Id. at 2. The new sentence was clearly based upon the particular facts of the case and applicable state sentencing law.[15] With no showing having been made of actual vindictiveness, the sentence does not offend due process.

Thus, the denial of postconviction relief on this ground by the state courts was not contrary to, or an unreasonable application of, clearly established federal law, nor an unreasonable determination of the facts. See 28 U.S.C. §2254(d); Texas v. McCullough, 475 U.S. 134, 140, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986)(no showing of vindictiveness where "different sentencers assessed the varying sentences that [defendant] received" and "the second sentencer provides an on-the-record, wholly logical,

---

[15]The state argued that Saintilus should receive a life sentence with a minimum forty-year term based upon the facts of the crimes and Florida's 10/20/life statute, stating:

> Your Honor is aware that this is the second jury that has found Mr. Sainovul Saintilus guilty of these crimes of robbery with a firearm and aggravated battery with a firearm. You were not the presiding judge on the last case.

> Mr. Duval Joseph is a true victim in the sense of the word. He was a man who was making a deposit from the business that he owned himself, just minding his own business, when this crime occurred and he was seriously, almost gravely, injured by the gunshot wound he received to his abdomen.

> There's -- There's few cases where there is a true victim in the sense that, you know, he was not an insider, he was not a person to provoke any kind of an attack; he was just really minding his own business. Those would be my thoughts on the -- on the sentence at this time.

(Transcript of sentencing conducted on April 22, 2005, at 8-9)(DE# 10-9; Ex. 12).

non-vindictive reason for the sentence"). See also Lewis v. Lackner, 588 F.App'x 561 (9th Cir. 2014), *cert. denied sub nom.*, Lewis v. Davey, ___ U.S. ___, 135 S. Ct. 1862, 191 L. Ed. 2d 739 (2015); Ochoa v. Uribe, 2013 WL 866118, 8-10 (C.D.Cal.), *Report and recommendation adopted*, 2013 WL 866167 (C.D.Cal. 2013).

## F. Ground Ten

Saintilus alleges in **ground ten** that his due process rights were violated when the trial court precluded him from calling as a defense witness Marcus Coastin on the basis that Coastin's testimony would have been inadmissible hearsay.

At trial, defense counsel sought to call Marcus Coastin as the sole defense witness. See Trial Transcript at 310-15. (DE# 10-9; Ex. 12). Trial counsel had learned of Coastin after the first trial and shortly before the second trial was to commence. Id. at 310. Coastin was incarcerated at the time of the second trial. Id. Trial counsel proffered Coastin's testimony to the court outside the presence of the jury. Id. at 310-11. Trial counsel stated that prospective witness Coastin would say that in late 1999, he had been approached by a man named Eric to commit a crime with Eric and another man named Jean Balthazar. Id. Balthazar was the tipster in this case. Id. The crime was to rob someone at a bank and they wanted Coastin to act as the lookout. Id. Coastin testified during his pretrial deposition that he had remembered the incident, because he had been approached soon after he had been released from juvenile detention on September 30, 1999. Id. Coastin would testify that a few days after Eric and Jean had approached him to commit the robbery, Eric came to him and taunted him for not participating in the robbery and, at that time, showed him a large sum of cash. Id. Trial counsel argued that the testimony was admissible as a statement against interest. Id. at 312-13. Trial counsel also

pointed out to the court that Saintilus knew Eric and Coastin had informed counsel that Eric and Saintilus "looked like kin." Id. at 313. The trial court agreed to hear Coastin's testimony outside the presence of the jury before ruling whether the testimony was admissible as an exception to the hearsay rules. Id. at 313-15.

Coastin offered sworn testimony outside the presence of the jury and the testimony was similar to that provided by trial counsel. Id. at 329-39. The testimony showed that Coastin would testify that, although he did not know Saintilus personally, he knew of Saintilus and knew Saintilus by the nickname "TuTu." Id. at 329. He testified that in October of 1999, a person named "Eric" told him that he actually committed the crimes for which Saintilus had been charged. Id. at 330-33. Coastin would have further testified that Eric told him that he (Eric) knew a man named Jean who knew a man who deposited money at the bank every day or every week, though he did not know Jean's last name. Id. Eric told Coastin that Jean wanted Coastin to drive the car while he (Jean) and Eric jumped out to rob the person before the deposit was made. Id. Coastin declined the invitation and a few days later, he saw Eric, who called him names and flashed money, boasting about the robbery. Id. at 333-32. Coastin stated that at that time, Eric told him he was mad at Saintilus because Saintilus had earlier reported him (Eric) to the police on an unrelated crime and Eric had been arrested as a result of the call. Id. at 334-35. Coastin testified that he believed Eric would get revenge against Saintilus for having been arrested. Id. at 335. Coastin testified that Eric and Saintilus closely resembled each other and Eric told him that Jean had committed the subject robbery. Id. at 336. Coastin testified that he learned about the subject robbery and that Saintilus had been charged for the crime after he had returned to prison in January of 2001. Id. at 336-39.

42

The trial court rejected trial counsel's argument that the testimony was admissible as an admission against interest, an exception to the hearsay rule. Id. at 340-43. The trial court additionally found that the testimony was speculative and involved double and triple hearsay. Id. Accordingly, the trial court ruled that the witness's testimony was inadmissible. Id. at 341. The defense then rested since no other witnesses, including Saintilus, was called by the defense. Id. at 344.

On direct appeal, Saintilus challenged the trial court's ruling with regard to the admission of Coastin's testimony as erroneous. See Initial Brief of Appellant at 23-32 (DE# 10-10; Ex. 19). The Florida appellate court affirmed the convictions without written opinion. Saintilus, 966 So. 2d 401. The Respondent correctly argues that this claim is unexhausted and prospectively procedurally barred, because Saintilus failed to raise the claim before the state appellate court in federal constitutional claims. The claim for relief was raised as a violation of Florida's Evidence Code. See Initial Brief of Appellant at 23-32. While Saintilus did cite to two Supreme Court cases, the references were brief and the core of Saintilus's argument was that the trial court erroneously applied Florida hearsay principles to exclude his sole defense witness. Id. As noted above, the "exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." Preston, 785 F.3d. at 457, quoting, McNair, 416 F.3d at 1303.

Consequently, Saintilus's claim is considered procedurally defaulted for federal habeas purposes. Again, Saintilus has not alleged, let alone demonstrated, cause or prejudice to overcome the default. As was true of claims one, two, three, seven and eight,

Saintilus apparently seeks to overcome the procedural default on the basis of actual innocence. See Traverse at 24-9. (DE# 13). For the reasons expressed immediately below in the discussion of ground eleven, Saintilus's assertion that he is actually innocent of the crimes convicted is meritless. Petitioner's procedural default bars federal habeas review of Ground Ten.

Even if Saintilus had exhausted any due process claim, his claim would still fail on the merits. Federal courts will grant habeas corpus relief on the basis of a state evidentiary ruling only if the ruling adversely affects the fundamental fairness of the trial. Sims v. Singletary, 155 F.3d 1312 (11th Cir. 1998)(denying habeas corpus relief on a claim that a motion for mistrial was wrongfully denied). See also Estelle v. McGuire, 502 U.S. 62 (1991); Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983); Jameson v. Wainwright, 719 F.2d 1125 (11th Cir. 1983), cert. denied, 466 U.S. 975 (1984); DeBenedictus v. Wainwright, 674 F.2d 841, 843 (11th Cir. 1982). In general, federal courts are reluctant to second-guess state evidentiary rulings, recognizing that the state court "has wide discretion in determining whether to admit evidence at trial, and may exclude material evidence when there is a compelling reason to do so." Lynd v. Terry, 470 F.3d 1308, 1314 (11th Cir. 2006); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985)(holding that federal habeas corpus is not vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543-44 (11th Cir.)(holding that federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections), cert. denied, 470 U.S. 1059 (1985).

However, where the petitioner claims that the state court's evidentiary ruling deprived him of due process, the habeas court

asks whether the error was of such a magnitude as to deny the petitioner his right to a fair trial, i.e., whether the error "was material as regards a critical, highly significant factor." Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Kight v. Singletary, 50 F.3d 1539, 1546 (11th Cir. 1995)(holding that state court evidentiary rulings reviewed only to determine whether error was of such magnitude as to deny petitioner right to fair trial). Moreover, such evidentiary rulings are subject to the harmless error analysis and will support habeas relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict." Sims v. Singletary, 155 F.3d at 1312, quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

For the reasons expressed by the respondent, Saintilus's assertion that the trial court erroneously excluded his sole defense witness is unavailing. See Response to Order to Show Cause at 41-45. (DE# 10). In Florida, Section 90.804(2)(c), Florida Statutes, provides an exception to the hearsay rule for a statement against interest.[16] The test for admissibility of statements against interest under section 90.804(2)(c) is whether (1) the declarant is unavailable, (2) the statements are relevant, (3) the statements tend to inculpate the declarant and exculpate the defendant, and (4) the statements are corroborated. Dort v. State, 175 So.3d 836, 840 (Fla. 4th DCA 2015), citing, Voorhees v. State, 699 So.2d 602,

---

[16]This section states:

(c) Statement against interest.—A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject the declarant to liability or to render invalid a claim by the declarant against another, so that a person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.

Fla.Stat. §90.804(c).

613 (Fla. 1997). As correctly determined by the trial court, there was no showing that "Eric" was unavailable and that the statements were reliable. <u>See</u> Trial Transcript at 341-43. (DE# 10-9; Ex. 12). Further, as determined by the trial court, Coastin's statements did not specifically implicate him as an accomplice to the subject robbery, but implicated others to that crime, i.e., "Eric" and Jean. <u>Id</u>. 340-41. For these reasons, as well as others, Coastin's statements did not qualify as a statement against interest under Florida law. <u>Dort</u>, 175 So.3d. at 841, *citing*, <u>Perez v. State</u>, 980 So.2d 1126, 1133 (Fla. 3d DCA 2008)(concluding that the portion of a statement by defendant's accomplice, in which accomplice indicated that a third party had been involved in the robbery, was not admissible under hearsay exception for statements against penal interest, as the statement implicating the third party was not inculpatory as to the accomplice/declarant).

The undersigned has not overlooked that Saintilus cited <u>Chambers v. Mississippi</u>, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)[17] in his brief on direct appeal. <u>See</u> Initial Brief of Appellant at 29. (DE# 10-10; Ex. 19). If Saintilus is arguing in this federal proceeding that the exclusion of Coastin's testimony rendered the trial fundamentally unfair based on *Chambers* and its progeny, he would be mistaken. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment ... or in the Compulsory

---

[17]In <u>Chambers v. Mississippi</u>, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), McDonald gave a sworn confession that he was responsible for the murder that Chambers was charged with committing. <u>Id</u>. at 287, 93 S.Ct. at 1042. McDonald subsequently recanted the confession. <u>Id</u>. at 288, 93 S.Ct. at 1042. At trial, Chambers called McDonald as a witness but was not permitted to cross-examine him because Mississippi's "voucher" rule prevented a party from impeaching his own witness, unless the witness was adverse, and the trial court ruled that McDonald was not adverse. <u>Id</u>. at 291, 295-96. The trial court also prevented Chambers from calling, on hearsay grounds, several friends of McDonald who heard him confess. The Supreme Court held that Chambers's due process rights were violated by the application of the hearsay rule to bar statements that "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." <u>Chambers</u>, 410 U.S. at 302.

Process or Confrontation clauses of the Sixth Amendment ..., the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" <u>Crane v. Kentucky</u>, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)(*quoting* <u>California v. Trombetta</u>, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). However, the Supreme Court has also recognized that "'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.'" <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006)(*quoting* <u>United States v. Scheffer</u>, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)). The Supreme Court has only on a few occasions held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. <u>See</u> <u>Pittman v. Sec'y, Dep't of Corr.</u>, 2015 WL 736417, 51-52 (M.D.Fla. 2015)(citing cases, such as, <u>Nevada v. Jackson</u>, ___ U.S. ___, 133 S.Ct. 1990, 1992, 186 L.Ed.2d 62 (2013)(rule did not rationally serve any discernible purpose).

Accordingly, a criminal defendant's right to offer testimony is not unlimited. <u>See</u> <u>Chambers</u>, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297. A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." <u>Taylor v. Illinois</u>, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). *Chambers* is wholly inapposite to the instant case. In *Chambers*, Mississippi prohibited the introduction of the hearsay statement against penal interest. Florida law does not. Section 90.804(c), <u>Fla.Stat</u>. allows hearsay statements to be admitted, if reliable. Further, as opposed to *Chambers*, the subject testimony was not trustworthy in that it was not corroborated by evidence from witnesses available to testify of their own knowledge at trial. In this case, unlike *Chambers*, there was no evidence at the time of trial, or reliable

47

post-trial evidence, that "Eric" confessed to anyone other than Coastin nor was there any other witness who claimed to have seen Eric and/or Jean commit the crimes. There is no evidence to connect Eric and/or Jean to the robbery, aside from the hearsay testimony of Coastin. The subject testimony clearly was not reliable.

In sum, there was no due process violation. Florida's rules of evidence are in compliance with *Chambers* and the trial court did not err in excluding unreliable hearsay testimony which lacked corroboration and trustworthiness and would only confuse the jury. Also, the evidence against Saintilus was overwhelming and any error here was, therefore, harmless. <u>See</u> <u>Brecht</u>, <u>supra</u>. The victim testified he saw one man walking toward him, who he struggled with over the money. The victim identified the perpetrator as Saintilus and testified that he had sufficient time to look at Saintilus's face before he was shot. Three other individuals identified Saintilus as the shooter or the man they saw running from the scene.

The reversal of the convictions and granting of a new trial was not warranted. Thus, if this Court were to find ground ten exhausted and not procedurally barred, Saintilus is still not entitled to federal habeas relief. Accordingly, the Florida Fourth District Court of Appeal's rejection of the claim on direct appeal was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent. <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). <u>See also</u> <u>Pittman</u>, 2015 WL 736417, at *54.

## G. <u>Ground Eleven</u>

Saintilus claims in **ground eleven** that there exists newly discovered evidence of his innocence in the form of (1)

extrajudicial statements made by the victim, supporting his contention of a suggestive photo lineup; and (2) witness statements provided by Phillip Joseph and Joseph Johnson, indicating that a man named "Urlick Loriston" (i.e., "Eric") admitted to them that he had committed the crimes for which Saintilus has been convicted.

If Saintilus is raising a freestanding claim of actual innocence, such a claim is not cognizable in this federal habeas proceeding. See Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993)(holding that no federal habeas relief is available for freestanding, non-capital claims of actual innocence); Jordan v. Secretary, Dept. of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007)(same).

Even assuming such a claim is cognizable, *see* District Attorney's Office for the Third Judicial District v. Osborne, 557 U.S. 52, 71-2, 129 S.Ct. 2308, 2321-22, 174 L.Ed.2d 38 (2009), In re Lambrix, 776 F.3d 789, 796 (11th Cir. 2015), Saintilus has not met the high standard to establish "actual innocence." See Bousley v. United States, 523 U.S. 614 (1998). As stated above, a petitioner must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, *quoting*, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316.

With regard to Saintilus's argument concerning the photo lineup, Saintilus has not presented any new evidence. The photographic lineup was known to Saintilus well-before the first trial as was the victim's multiple identifications of Saintilus as the perpetrator and the victim's comments during the three identification procedures. At the first trial, both Officer John Pulitano and Joseph, the victim, offered testimony about the circumstances of the two photographic lineups and the live lineup. See Transcript of first trial conducted on May 6, 2002, at 191-95, 199-201, 403-07. (DE# 10-3; Ex. 3). Before the second trial, trial counsel deposed the victim, questioning him about the identification proceedings and his identification of Saintilus as the perpetrator. See Transcript of Deposition of Duval Joseph taken on September 9, 2004.[18] (DE# 10-16; Ex. 42). During the second trial, the victim again testified about the photographic procedures employed by the police and his identification of Saintilus as the perpetrator. See Transcript of second trial conducted on March 1, 2005, at 140-48. (DE# 10-7; Ex. 12). Defense counsel ably cross-examined the victim during the second trial regarding his identification of Saintilus and pointed out to the jury that during the initial photographic lineup Joseph had merely said that "he looks familiar," when referring to photograph number two, Saintilus's photograph. Id. at 152-64.

Contrary to Saintilus's postconviction assertions, the jury was well-aware of the victim's particular comments to the police when identifying Saintilus as the perpetrator. Further, Saintilus cannot point to any conduct by the police that led to a suggestive identification. Thus, the challenge to the photo lineup does not

___

[18]A copy of the deposition transcript was attached as an exhibit to the state's response to Saintilus's second Motion for Postconviction Relief. (DE# 10-16; Ex. 42).

demonstrate the existence of new evidence sufficient to support a claim of actual innocence. Nor has Saintilus demonstrated that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.

Next, Saintilus presented to the state postconviction court statements signed under the penalty of perjury from Joseph Johnson and Phillip Joseph.[19] Both affiants state that Urlick ("Eric") Loriston confessed to them that he and another individual named "Jean" committed the robbery for which Saintilus was charged and convicted. Phillip Joseph additionally stated in his affidavit that soon after he had been released from prison in September 2003, he and Eric reunited. See Affidavit executed by Phillip Joseph on March 10, 2013, at 1. Joseph stated that Eric was living a "luxury lifestyle," and had paid for them to visit to a strip club and bought him clothing. Id. Joseph questioned Eric as to the source of the money, stating as follows in his affidavit:

> At that time, I told [Erick] that I got arrested in 1999 I had [heard], a few months later, he had robbed a bank. Erick said: "It wasn't no bank I robbed. It was a Haitian man going to put money in the bank [he] robbed." Erick also mentioned he shot the Haitian man because he was trying to resist. I asked Erick who was with him on the score, he said: "a dude named Jean" who was unknown to me. Then he brought up how Tu-Tu had been charged for the crime and went to prison for it. Erick said to me that it [was] good for Tu-Tu being accused for that crime because him and Tu-Tu and him [sic] had started beefing over a drug spot.

---

[19]The undersigned notes that Saintilus provided two sets of affidavits from each of the two affiants. The affidavits were attached as exhibits to Saintilus's second Rule 3.850 motion. (DE# 10-14; Ex. 40). The affidavits are essentially the same for each affiant. However, one of the affidavits is not dated and the dates of execution for the others are different. Also, some information contained in the various affidavits is different. Compare Affidavit of Joseph Johnson executed on March 22, 2013, with unexecuted Affidavit of Joseph Johnson. Compare also Affidavit of Phillip Joseph executed on March 10, 2013, with Affidavit of Phillip Joseph executed on May 29, 2013. The differences in the affidavits have no impact on this Court's actual innocence determination and, therefore, no further discussion on the varying affidavits is necessary.

Id. at 1-2.  Joseph also stated that he did not come forward with the information earlier, because he "didn't think nothing of it until [he] was reunited with TuTu at Columbia Correctional Institution." Id. at 2. Johnson stated in his affidavit that he met Saintilus at Columbia CI and when Saintilus told him about the robbery and claimed that he was innocent, he realized that Saintilus had been wrongly convicted of a crime committed by Eric. See Affidavit executed by Joseph Johnson on March 22, 2013.

The actual innocence claim was raised before the state postconviction court. The state filed a response, arguing that relief was not warranted on the claim, because the alleged newly discovered evidence was not of such a nature that it would probably produce an acquittal upon retrial in that it consisted of inadmissible hearsay. See Response to Defendant's Motion for Postconviction Relief at 2-3, *citing,* Williamson v. State, 961 So.2d 229 (Fla. 2007)(upheld summary denial of a newly discovered evidence claim based on trial court's finding it was hearsay; lengthy discussion applying hearsay rule to the post-conviction claim; concluded no facts were alleged that supported a hearsay exception); Kokal v. State, 901 So.2d 766 (Fla. 2005)(upheld summary denial of a newly discovered evidence claim reasoning, in the alternative, that the alleged new evidence was hearsay and that no predicate facts for a hearsay exception were alleged). (DE# 10-15; Ex. 42). The state further argued that the evidence that another individual named "Eric" (i.e., Urlick) had been the perpetrator was not new in that trial counsel attempted to call Marcus Coastin as a defense witness at Saintilus's second trial to testify that "Eric" actually committed the crime, that "Eric" had a vendetta against Saintilus, and that "Eric" resembled Saintilus. Id. at 4.

The postconviction court summarily denied relief, stating as follows in its written order:

> As more fully set forth in the attached State's Response, which the Court hereby adopts and incorporates herein, Defendant's Motion fails because the purported "newly discovered evidence" constitutes inadmissible hearsay, and even if admissible, would probably not produce an acquittal upon retrial as the evidence of Defendant's guilt was overwhelming.

(Order Denying Defendant's Motions for Postconviction Relief at 2)(DE# 10-15; Ex. 44.). The trial court's ruling was affirmed on appeal. See Saintilus, 2015 WL 1399164.

The trial court properly denied relief, especially because the post-trial affidavits are highly suspect and their reliability clearly questionable. The affidavits were executed long after the robbery had been committed in 1999, and long after the second trial had commenced in March 2005. The affiants indicate in their respective affidavits that they were aware as early as 1999, that "Eric" had committed the robbery and had not been charged or prosecuted for the offenses. Phillip Joseph acknowledged that Eric told him that Saintilus, a/k/a "TuTu," had been charged and convicted of the offense, although he (Eric) had committed the crime. Moreover, the affidavits contradict otherwise reliable evidence that Saintilus was the robber. The two affidavits exemplify the sort of "not uncommon" and "unfortunate" occurrence where a prisoner is able to "find someone ... to vouch for him." Herrera v. Collins, 506 U.S. 390, 423, 113 S.Ct. 853, 872, 122 L.Ed.2d 203 (1993)(O'Connor, S., concurring).

Finally, as indicated herein, the defense at trial was one of misidentification and trial counsel vigorously challenged the identification of Saintilus as the robber and pointed out to the

53

jury the lack of physical evidence linking Saintilus to the offenses charged. See e.g., Trial Transcript at 347-64, 378-85. (DE# 10-; Ex. 12). By finding Saintilus guilty of the robbery and aggravated battery offenses, the jury chose to reject the defense presented and, instead, believe the strong testimony of the state witnesses that it was Saintilus who had committed the offenses.

The jury apparently found credible the victim's testimony that he was able to get a good look at the robber's face during the struggle and before the shooting and that he was certain before and during trial that Saintilus had been the person who had robbed him of his bank deposit bag. The jury must also have believed the testimony of the other state witnesses who identified Saintilus as the shooter or the person seen running from the scene of the robbery. Saintilus has clearly not satisfied his burden under *Schlup*.

## VIII. Evidentiary Hearing

Petitioner has requested an evidentiary hearing. Based upon the foregoing, Petitioner's request for an evidentiary hearing on the merits of any or all of his claims should be denied since the habeas petition can be resolved by reference to the state court record. 28 U.S.C. §2254(e)(2); Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). See also Atwater v. Crosby, 451 F.3d 799, 812 (11th Cir. 2006)(addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing

would not assist in the resolution of his claim."). Petitioner has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

## IX. Certificate of Appealability

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the petition is clearly meritless, Petitioner cannot satisfy the Slack test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this

recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

X. <u>Recommendations</u>

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be denied. It is further recommended that no certificate of appealability issue.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this <u>4</u><sup>th</sup> day of March, 2016.

_____
UNITED STATES MAGISTRATE JUDGE


cc:  Sainovul Saintilus, <u>Pro</u> <u>Se</u>
     DC# L41044
     Columbia Correctional Institution-Annex
     216 S.E. Corrections Way
     Lake City, FL 32025-2013

     Matthew Steven Ocksrider, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428