UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21987-CIV-ALTONAGA/White

**SAINOVUL SAINTILUS**,

    Petitioner,
v.

**JULIE JONES**,

    Respondent.
_____/

## ORDER

On May 20, 2015, Petitioner, Sainovul Saintilus ("Petitioner" or "Saintilus"), filed a Petition [ECF No. 1] seeking habeas corpus relief on numerous grounds. The case was referred to Magistrate Judge Patrick A. White for a report and recommendation on dispositive matters. (*See* Order [ECF No. 3]). Judge White entered a Report of Magistrate Judge ("Report") [ECF No. 14] on March 4, 2016, recommending the Petition be denied and no certificate of appealability issue. (*See generally id.*). Petitioner filed a timely Objection . . . ("Objections") [ECF No. 15] on March 17, 2016. The Court has carefully reviewed the Petition, Report, Objections, the record, and applicable law.

### I. BACKGROUND

Petitioner, a state prisoner, was convicted of crimes related to a struggle with a man carrying a bank deposit bag in front a bank. (*See* Report 3). The victim was shot during the struggle and fell into a coma for several weeks thereafter. (*See id.*). When he awoke from the coma, the victim identified Petitioner as his attacker from a photo lineup; identified Petitioner in a live lineup; and positively identified Petitioner as the shooter at trial. (*See id.*). Additionally, three other witnesses identified Petitioner in a photo lineup and testified to having seen him at

the plaza in which the bank was located both before the shooting and running away immediately afterward. (*See id.* 3–4). One of these three witnesses could not again identify Petitioner at trial. (*See id.* 4). Petitioner presented a defense of misidentification, but was convicted despite the absence of physical evidence linking him to the crime. (*See id.*).

Petitioner appealed his first conviction, which was reversed by the Florida Fourth District Court of Appeal on the basis of prejudicial hearsay evidence admitted at trial. (*See id.*). Petitioner was convicted again after a new trial before a new judge, who sentenced him to a term of imprisonment that exceeded the first sentence by ten years. (*See id.* 4–5). Petitioner unsuccessfully challenged this sentence in a *pro se* Florida Rule of Civil Procedure 3.800 motion, and filed an unsuccessful direct appeal. (*See id.* 5). He then filed a *pro se* Rule 3.850 motion for postconviction relief with the trial court, claiming ineffective assistance of trial counsel. (*See id.* 6). The court summarily dismissed some of the claims, and dismissed the remainder after a full evidentiary hearing at which Petitioner was represented by appointed counsel. (*See id.*). Through appointed counsel, Petitioner then appealed three of these claims to the state appellate court, which affirmed the denial of collateral relief, denied a motion for rehearing, and issued the mandate on July 20, 2012. (*See id.*).

In 2013, Petitioner also filed a second *pro se* Rule 3.800 motion and second *pro se* Rule 3.850 motion, both of which were denied. (*See id.* 6–7). While the second Rule 3.850 motion was pending, on April 26, 2013, Petitioner filed his first *pro se* petition for writ of habeas corpus in this Court. (*See id.* 7). It was dismissed without prejudice except as to any application of federal statutes of limitations or procedural bars that might apply. (*See id.*). The trial court did not issue its denial of the second Rule 3.850 motion until after the first habeas petition was

dismissed; the state appellate court affirmed that denial and the mandate issued on April 24, 2015. (*See id.*). Petitioner filed the present Petition on May 20, 2015. (*See* Pet. 17).

## II. LEGAL STANDARDS

Ineffective Assistance of Trial Counsel

A court evaluates claims asserting ineffective assistance of trial counsel to determine "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The resulting two-part test first examines whether counsel's representation was so deficient it "fell below an objective standard of reasonableness" "under prevailing professional norms," *id.* at 688, which requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687. The second part examines whether the deficient performance prejudiced the defendant such that there was a reasonable probability the result would have been different but for counsel's unprofessional errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Accordingly, courts adhere to a strong presumption "counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and strategic decisions of trial strategy are afforded deference without requiring an attempt to divine a lawyer's mental processes underlying the strategy, *see id.* at 689–91. In fact, a habeas court's review under the *Strickland* standard is "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 191 (2011)). This is a high burden for a petitioner to meet.

Actual Innocence

A one-year statute of limitations applies to petitions for writs of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1). In extraordinary cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). If proved, actual innocence "serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (alterations added).

This exception requires a petitioner to persuade the court no reasonable jury would have voted to find him guilty beyond a reasonable doubt in light of the new evidence. *See id.*; *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012). In making this assessment, the timing of the petition is a factor bearing on the reliability of the evidence purporting to show actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995). To successfully plead actual innocence, a petitioner must demonstrate his conviction is the product of "a constitutional violation." *Id*. "Actual innocence" means factual innocence, not mere legal insufficiency. *See Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008). The scope of this exception is exceedingly narrow. *See Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

Review of Magistrate Judge's Order

When a magistrate judge's "disposition" has properly been objected to, district courts must review the disposition *de novo*. FED. R. CIV. P. 72(b)(3). "[T]he plain language of the statute governing review [of the report] provides only for *de novo* review of 'those portions of

4

the report . . . to which objection is made.'" *Wanatee v. Ault*, 39 F. Supp. 2d 1164, 1169 (N.D. Iowa 1999) (alterations added) (quoting 28 U.S.C. § 636(b)(1)). Although Federal Rule of Civil Procedure 72 itself is silent on the standard of review, the Supreme Court has acknowledged Congress's intent was to require a *de novo* review only where objections have been properly filed, not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." (alteration added)). In any event, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (alterations added) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

### III. ANALYSIS

Petitioner challenges his convictions and sentences on what he presented as four general grounds, but which the Report construes as eleven specific grounds. (*See* Report 3 n.3). The first eight grounds regard ineffective assistance of trial counsel, on the basis of: 1) failure to depose the victim or suppress identification evidence ("Ground 1"); 2) failure to effectively communicate the existence and consequences of the state's twenty-year plea offer ("Ground 2"); 3) failure to appropriately respond to possible impermissible contact between a juror and police ("Ground 3"); 4) failure to appropriately respond to a juror's ties to law enforcement during *voir dire* ("Ground 4"); 5) failure to appropriately respond to a sleeping juror ("Ground 5"); 6) failure to investigate prospective defense witnesses ("Ground 6"); 7) failure to allow Petitioner to testify ("Ground 7"); and 8) failure to provide the trial court with sufficient information to obtain a favorable ruling or appeal as to calling Marcus Coastin as a defense witness ("Ground 8"). (*See*

*id.* 2–3). Petitioner also argues two grounds for denial of due process on the basis of: 1) vindictive sentencing ("Ground 9"); and 2) preclusion from calling Marcus Coastin as a defense witness ("Ground 10"). (*See id.* 3). Finally, Petitioner argues his actual innocence on the basis of newly discovered evidence ("Ground 11"). (*See id.*).

Judge White finds Grounds 1, 2, 3, 7, and 8 are unexhausted and thus procedurally barred from federal habeas review because Petitioner never presented those grounds to the state appellate court. (*See id.* 18–22). Judge White recommends the remaining Grounds, numbered 4, 5, 6, 9, 10, and 11, should be denied on the merits. (*See id.* 23–56). Petitioner raises six objections; each is considered in the order presented. (*See generally* Objections).

### A. First Objection (Ground 4)

Petitioner argues trial counsel failed to take appropriate action to address a biased juror. (*See id.* 1–2). The record is clear during *voir dire*, then-prospective juror Nelson Izquierdo ("Izquierdo") informed the trial court his brother and brother-in-law were "in law enforcement." (Report 24 (quoting Trial Tr. [ECF No. 10-7] Ex. 12, 32:21–22)). The trial court immediately asked Izquierdo whether that would affect his ability to be fair and impartial in this case, and Izquierdo answered in the negative. (*See* Trial Tr. 33:2). Upon further questioning by Petitioner's counsel regarding Izquierdo's father's arrest, Izquierdo reaffirmed his ability to be a fair and impartial juror. (*See id.* 92:19–21). When trial counsel addressed the entire venire and asked whether anyone could not avoid pre-judging or would be unable to apply the correct burden of proof, Izquierdo remained silent, again indicating his fitness to be an impartial juror. (*See id.* 94:15–95:8). Additionally, at the conclusion of the strike conference, the court asked Petitioner if he agreed to the jurors selected by counsel — including Izquierdo — and Petitioner assented. (*See id.* 106:20–21). Because the record does not provide any evidence additional

6

questioning would have revealed an indication of bias, or that counsel's selection of Izquierdo as a juror was the product of anything other than sound trial strategy, Judge White finds this ground for ineffective assistance of trial counsel meritless. (*See* Report 26–27 (citing *Strickland*, 466 U.S. at 689–90)).

Petitioner objects, and accuses Judge White of substituting his own opinion for that of the trial court. (*See* Objections 1–2). "The magistrate [sic] found that trial counsel Austin's inaction [in failing to strike Izquierdo] was the result of trial strategy; this finding is not supported by the record." (*Id.* 1 (alteration added)). Petitioner misinterprets the Report, which does not make the factual finding counsel's questioning and decision regarding Izquierdo's inclusion on the jury was a sound trial strategy; rather, the Report states there is nothing in the record to suggest the contrary, as would be required for Petitioner to overcome the highly deferential standard of review applied to an attorney's conduct during *voir dire*. *See Strickland*, 466 U.S. at 689–90. The Court agrees, and further agrees with Judge White's conclusion "[e]ven if counsel's performance could in some way be considered deficient in this regard, Saintilus, at the very least, acquiesced in the strategy employed not to strike this juror." (Report 26 (alteration added)).[1] Ground 4 is meritless.

B. **Second Objection (Ground 5)**

Petitioner argues trial counsel failed to properly address a situation involving a purportedly sleeping juror. (*See* Objections 2–3). The Report addresses this claim with admirable thoroughness. (*See* Report 27–33). The record shows one juror repeatedly closed his eyes during stretches of the trial. (*See id.* 27–28). At one point, the trial court inquired whether the juror was alright, and he appears to have given a nonverbal response, because the court said

---

[1] Petitioner's additional objection, that the Report "does not mention that Izquierdo later became the foreman" (Objections 1), is both immaterial and mistaken (*see* Report 25 ("Juror Izquierdo served as the foreperson." (citation omitted))).

"okay" and the proceedings continued. (*See id.* 28 (citation omitted)). In the initial *pro se* Rule 3.850 motion, the trial court conducted an evidentiary hearing where Petitioner was represented by appointed counsel. (*See id.*). When Petitioner was called as a witness on his own behalf at that evidentiary hearing, he testified he had noticed two jurors sleeping and asked trial counsel to address the situation, but counsel had refused and did not seek a mistrial. (*See id.*).

The state then called two witnesses of its own, the prosecutor from the criminal trial, and Petitioner's own trial counsel; both said they saw this juror close his eyes, but neither testified they had seen him sleeping. (*See id.* 28–29). In his testimony, the prosecutor explained he had been sitting very close to the juror in question, and said his eyes made it appear as if he was sleeping when he was not. (*See id.* 29). After extensive testimony and argument, the trial court found the state's witnesses "extraordinarily credible" and Petitioner "lacking credibility," — likely in part due to his testimony a second juror was sleeping without anyone else in court noticing — and therefore found this claim meritless. (Tr. of May 1, 2009 Hr'g ("May 1 Hearing Transcript") [ECF Nos. 10-13–14] Ex. 32, 49–50). That ruling was affirmed on appeal. *See Saintilus v. State*, 90 So.3d 299 (Fla. 4th DCA 2012). Confronted with this detailed record including a full evidentiary hearing, Judge White defers to the trial court's sound credibility determinations and recommends relief on this ground be denied. (*See* Report 30–33 (citing, *inter alia*, *Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007))).

Petitioner argues Judge White erred in deferring to the trial court because "it did not make any credibility finding of facts [sic] as to this particular claim. Rather, its ruling was in the form of a generalized order that encompassed several post-conviction claims. The trial court's ruling was not sufficiently develop [sic] and/or particularized enough to be accord [sic] the deference that the magistrate [sic] appears to state would apply here." (Objections 2). Petitioner

8

is mistaken. Although the trial court's order itself was short, that order denied the motion "for reasons as stated on the record in open court." (Order [ECF No. 10-14] Ex. 33). And as described at length in the Report and above, in open court and on the record, the trial court clearly made thorough credibility determinations which were incorporated into the subsequent order by reference. Therefore, this argument is unavailing.[2]

Petitioner also argues "[f]rom the record here there is clear and convincing evidence that a juror was sleeping. . . . Contrary to the Magistrate's [sic] belief, there is no conflict as to these facts."[3] (Objections 3 (alterations added)). As support, Petitioner reproduces, without citation, a transcript passage he argues "shows that trial counsel Austin endeavored to alert the court [to the sleeping juror] but for some odd reason did not object or move for a mistrial and preserve the issue for appeal." (*Id.* 2 (alteration added)). The reproduced passage does indicate the trial court noticed the juror in question may have been sleeping, but this issue was subsequently, and again, thoroughly, examined in the later evidentiary hearing. The Court agrees with Judge White's conclusion "Saintilus cannot show that his counsel acted outside the wide range of reasonable professional assistance or that there was a reasonable probability of a different outcome had his counsel requested the court to colloquy Juror McNeal, moved for a mistrial, or sought the removal of the juror." (Report 32 (citing, *inter alia*, *Lamar v. Graves*, 326 F.3d 983, 986 (8th Cir. 2003))).

---

[2] Petitioner makes this exact argument, copied and pasted, in the first three objections. (*See* Objections 2, 3, 5–6). It is equally unavailing each time.

[3] The Court disagrees with this assertion. Beyond the thorough testimony to the contrary discussed above, at the evidentiary hearing, Petitioner also testified there were in fact two sleeping jurors — a claim no other witness corroborated. (*See* Report 28).

### C. Third Objection (Ground 6)

Petitioner argues trial counsel failed to interview and call four witnesses who were purportedly available to testify on Petitioner's behalf. (*See* Objections 3). This is Petitioner's most thorough objection. (*See id.* 3–7). In his Rule 3.850 motions, Petitioner argued these witnesses would have furthered his mistaken identification defense and testified the true perpetrator(s) framed him. (*See* Report 34). As before, a full evidentiary hearing was held on this issue, during which the trial court weighed Petitioner's argument against trial counsel's testimony he recalled interviewing one of the four witnesses in question at the jail in which the witness was incarcerated, but could not recall the details or any interactions with the other three potential witnesses. (*See id.* (citing May 1 Hr'g Tr. 24–25)). Although counsel could not recall the specifics of the one interview he remembers, he testified he decided not to call that witness either because he was not credible or because his story conflicted with Petitioner's account of the events. (*See* May 1 Hr'g Tr. 25:9–11).

The trial court found counsel's testimony credible, and Petitioner's testimony incredible, and therefore rejected this argument as meritless. (*See* Report 35 (citing May 1 Hr'g Tr. 49–50)). Again, Judge White determines strong deference should be afforded to the trial court's credibility determinations (*see id.* (citing *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000))), concluding even if trial counsel's performance was deficient, Petitioner still cannot satisfy the prejudice prong of *Strickland* because his conviction was based on considerable evidence of guilt (*see id.* 36). *See Fortenberry v. Haley*, 297 F.3d 1213, 1228–29 (11th Cir. 2002) ("the absence of exculpatory witness testimony from a defense is more likely prejudicial when a conviction is based on little record evidence of guilt."); *Strickland*, 466 U.S. at 695–96.

Petitioner objects on a number of grounds. First, Petitioner argues trial counsel's testimony about why he did not call the witnesses is of limited value because counsel could not remember them. (*See* Objections 3). The Court agrees to an extent, but seeing as the hearing in question took place years after the trial, counsel's testimony about the reasons why he would not have called a witness for his client is not completely without value — particularly because the court found him a credible witness. This fact alone does not advance Petitioner's argument.

Second, Petitioner suggests an evidentiary hearing is required, but as he concedes on the same page, "a full evidentiary hearing was held." (*Id.* 4). Petitioner does not explain what would be gained from holding a second evidentiary hearing now, with even more years between the testimony and the trial. Petitioner again argues this hearing was insufficient and deference should not be given to a "generalized" order in which the trial court "d[id] not make the necessary credibility determinations or legal findings necessary" (*id.* (alteration added)), but this argument is unpersuasive because the court did indeed make such findings.

Third, Petitioner objects to the Report's conclusions regarding prejudice under the *Strickland* standard. (*See id.* 5). Judge White notes the substantial evidence against Petitioner, including identification by the victim in a photographic lineup; a live lineup; and at trial, as well identification by other eyewitnesses placing him at the scene of the crime and fleeing afterward. (*See* Report 37). Petitioner argues "[t]hese facts while damaging do not refute petitioner's [sic] claim" because the witnesses counsel failed to call would have testified this was a case of mistaken identity. (Objections 5 (alteration added)). Petitioner misunderstands the parties' burdens under *Strickland*. The evidence presented at trial — and cited in the Report — need not conclusively disprove Petitioner's theory of the events; rather the conviction is upheld unless he shows but for counsel's ineffective assistance, there is a reasonable probability the outcome

would have been different. *See* 466 U.S. at 694. Petitioner has not done so. Here, while additional support for misidentification could have marginally strengthened that defense, much of that argument was already presented to, and rejected by, the jury. The Court agrees with Judge White's conclusion Petitioner has failed to show these witnesses would likely have altered the trial outcome. (*See* Report 36–38).

### D.     Fourth Objection (Grounds 9 & 10)

The entirety of this objection reads: "The Petitioner asserts that grounds nine and ten are debatable issues and therefore the magistrate's [sic] request to deny COA should not be granted." (Objections 7). To warrant a certificate of appealability, "Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise." (Report 55 (citing *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (2001))). The Report recommends no certificate of appealability issue — as to any ground — because the Petition is "clearly meritless" and therefore "cannot satisfy the *Slack* test." (*Id.*). Petitioner fails to cite any legal support or explain in what way these issues are debatable, and the Court agrees with Judge White's analysis. (*See id.* 38–48).

Regarding Ground 9, vindictive sentencing, it is true Petitioner's sentence following his second trial exceeds his initial sentence. (*See id.* 38). However, because a different judge presided over the second trial, no presumption of vindictiveness arises from the greater sentence, *see Colten v. Kentucky*, 407 U.S. 104, 116–17 (1972), and there is nothing in the record to suggest vindictive conduct or motive (*see* Report 39–40). Petitioner has not shown how a reasonable jurist could disagree.

Regarding Ground 10, preclusion of testimony by Marcus Coastin because of hearsay, the trial judge heard the testimony in question outside the presence of the jury, and disallowed it

because it was speculative and contained double and even triple hearsay. (*See id.* 42–43). Petitioner raised this issue on appeal and a Florida appellate court affirmed his conviction. (*See id.* 43). Petitioner provides no argument to the contrary. Moreover, because Judge White not only concludes this claim fails on the merits, but also finds it is procedurally defaulted (*see id.* 43–44), Petitioner's only nominal objection is unavailing.

   **E. Fifth Objection (Ground 11)**

   The entirety of this objection reads: "The Petitioner disagrees with the Magistrates [sic] legal and factual conclusion in regards to Petitioner's actual innocent [sic] claims. Similarly, the magistrate's [sic] request to deny COA should not be granted." (Objections 7). In short, Petitioner argues actual innocence based on two pieces of newly discovered evidence: 1) evidence a photo lineup was suggestive; and 2) post-conviction affidavits claiming another man committed the crimes in question. (*See* Pet. 12). As Judge White thoroughly explains, neither argument persuades. The photo lineup argument fails because it is not new evidence; the lineup and any purported shortcomings were known to Petitioner at the time of the trial, and indeed to the jury as well. (*See* Report 50). As for the post-conviction statements, this testimony is not clearly new, as Petitioner raised the misidentification defense at trial, and these statements cover the same factual matter he tried to enter via testimony by Marcus Coastin. (*See id.* 51–55). Additionally, even if the evidence were new, these statements are not so overwhelmingly credible as to meet the high standard required for claims of actual innocence, making it more likely than not a reasonable jury would not have convicted Petitioner in light of all the evidence. (*See id.* 50–51); *see also Schlup*, 513 U.S. at 327–28. In short, Petitioner fails to explain what exactly his objections are, and the Court sees no reason to disagree with Judge White's analysis.

F.  **Sixth Objection (Grounds 1, 2, 3, 7 & 8)**

As to the procedurally barred claims, Petitioner "would request that these claim [sic] also be reviewed under the Supreme Court's decision of *Martinez v. Ryan* and *Trevino v. Thaler*, as counsel [sic] was represented by counsel during his initial appeal of post-conviction claims, when the procedural bar occurred." (Objections 7 (internal citations omitted)). *Martinez* recognizes a narrow exception to the U.S. Supreme Court's previous suggestion post-conviction counsel's errors do not establish cause for a procedural default. *See* 132 S. Ct. 1309, 1314 (2012) (discussing *Coleman v. Thompson*, 501 U.S. 722 (1991)). Following *Martinez*, "an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims." *Id.* at 1317 (citations omitted).

Under *Martinez* and *Trevino*,[4] a petitioner must show "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*. To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318 (internal citation omitted).

In the Objections, Petitioner makes no argument at all, and simply requests his case be examined under this standard. (*See* Objections 7). Looking to the Petition, then, the Court does find substantive argument which might address the second *Martinez* inquiry, into whether the underlying claims are substantial. (*See* Pet. 6–7). However, the same cannot be said of the

---

[4] *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), does not provide a separate test, but rather clarifies *Martinez* also applies to states with Florida's procedural framework. *See*, *e.g.*, *Masburn v. Sec'y, Dep't of Corr.*, No. 4:12-CV-289-RS-EMT, 2014 WL 6882628, at *25 n.10 (N.D. Fla. Dec. 4, 2014).

initial *Martinez* inquiry, regarding a petitioner's burden to show appointed counsel during the initial-review collateral proceeding was ineffective under the *Strickland* standard: not only is there no mention whatsoever of appointed counsel's assistance during collateral proceedings — in either the Petition or the Objections before the Court — but Petitioner has also failed to exhaust this claim below, as is required to use it as a ground to excuse the procedural default of any ineffective assistance of trial counsel claims. *See Barker v. Sec'y, DOC*, No. 213-CV-497-FTM-29DNF, 2015 WL 3883852, at *6 (M.D. Fla. June 24, 2015) (citing *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000) (concluding a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of appellate counsel claim as cause for procedural default for another claim)). Therefore, the Court does not find Petitioner's arguments successfully invoke or benefit from *Martinez*.

## IV. CONCLUSION

The undersigned has conducted a *de novo* review of the Petition, the record, applicable law, and Judge White's analysis with respect to the Objections, and has reviewed the remainder of the Report for plain error. On all points, the undersigned agrees with the analysis and recommendations stated in Judge White's Report, and finds the Report should be accepted and adopted in whole. For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. The Report **[ECF No. 14]** is **ACCEPTED AND ADOPTED**.

2. The Petition **[ECF No. 1]** is **DENIED**.

3. A certificate of appealability shall not issue.

4. The Clerk shall **CLOSE** this case, and any pending motions are **DENIED as moot**.

CASE NO. 15-21987-CIV-ALTONAGA/White

**DONE AND ORDERED** in Miami, Florida, this 8th day of April, 2016.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record;
   Sainovul Saintilus, *pro se*